IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

CATHEY SWOBODA                                                                                      PLAINTIFF

VS.                                            CASE NO. 11-CV-1073

CENTRAL ARKANSAS
DEVELOPMENT COUNCIL                                                                 DEFENDANT

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed by Defendant Central Arkansas Development Council. (ECF No. 22). Plaintiff has filed a response (ECF No. 26), and Defendant has filed a reply. (ECF No. 29). The Court finds this matter ripe for consideration.

### BACKGROUND

Plaintiff Cathey Swoboda is a former employee of Defendant Central Arkansas Development Council ("CADC"). CADC is a non-profit organization that, among other things, provides non-emergency public transportation to elderly, disabled, and low-income Arkansans. Burton began working for CADC in 2004. Several months prior to Plaintiff's termination, she was interviewed by and gave statements to CADC attorneys who were conducting a personnel investigation. The investigation related to disputes between Plaintiff's co-worker, Ellen Castleberry, and Debbie Bartlett, Plaintiff's CADC supervisor. Castleberry alleged that Bartlett excessively disciplined African-American CADC drivers while refusing to discipline white drivers. It appears that Plaintiff's statements to the attorneys substantiated Castleberry's claims that Bartlett was discriminating against employees on the basis of race. Bartlett ultimately remained in her position as a CADC supervisor, and no employees were disciplined as a result of the interviews and investigation.

Plaintiff was a witness to an incident on April 19, 2010, when another CADC employee, Pearl Livingston, slipped and fell down the steps at the rear of the CADC building in Camden, Arkansas. Plaintiff provided a written statement to CADC management regarding Livingston's fall. Livingston filed a claim with the Arkansas Workers' Compensation Commission.

On the morning of December 16, 2010, Helen Burton and Maria Garcia noticed that Constance Barnes, a CADC driver, was acting strangely. Plaintiff also noticed that Barnes had the smell of mouthwash on her breath. Burton and Garcia shared their concerns about Barnes's possible impairment with their co-worker, Pearl Livingston. Livingston confronted Barnes and smelled alcohol on Barnes's breath. Barnes admitted to Livingston that she had been drinking. Livingston called Plaintiff and told her that she needed to stop Barnes because Barnes was "sloppy drunk." Plaintiff then attempted to locate Barnes outside. When Barnes could not be located, Plaintiff called Barnes's cell phone. Barnes advised Plaintiff that she would pull over and call Plaintiff back. Barnes did not call Plaintiff back and did not answer when Plaintiff called Barnes a second time approximately ten minutes later.

Livingston eventually notified her supervisor, Debbie Bartlett. Before the incident was finally reported to Bartlett, however, Barnes was able to leave the facility in a CADC van and pick up a CADC client. Bartlett contacted the Pine Bluff Police Department, and Barnes was subsequently pulled over by an officer. She failed field sobriety tests at the scene. For reasons that are unclear to the Court, no charges were brought against Barnes relating to this incident.

After an investigation, CADC identified six employees who had learned of Barnes's possible intoxication prior to her leaving the facility in a CADC van: Plaintiff Cathy Swoboda (African-American, age 57); Helen Burton (Caucasian, age 55); Pearl Livingston (African-American, age 54); Maria Garcia (Hispanic, age 49); Sue Ellen Castleberry (Caucasian, age 33);

2

and Gwen Edwards (African-American, age 53). Plaintiff, Burton, Castleberry, and Livingston were suspended and subsequently terminated on January 7, 2011 on grounds that they failed to timely notify their respective supervisors of Barnes's possible intoxication. CADC maintains that Edwards and Garcia were not terminated because they reported their concerns about Ms. Barnes to their superiors in a timely manner.

After her termination, Plaintiff's job duties were "reassigned" to Mary McMillian (age 23) and Jim Lowe (age 57). CADC maintains that Plaintiff's duties were only temporarily assigned to McMillian and Lowe and that Plaintiff's position was permanently filled by Beverly Coggins (age 53) on February 5, 2011, roughly one month after Plaintiff was terminated. (ECF No. 23-4, *Affidavit of Carol Staley*, ¶ 15).

In December 2011, Plaintiff filed this suit alleging age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq*. ("ADEA"); race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 ("Title VII"), and the Arkansas Civil Right Act, ARK. CODE ANN. § 16-123-101, *et seq*. ("ACRA"); and retaliation in violation of ACRA, ARK. CODE ANN. § 16-123-108(a). Plaintiff alleges that age and race played a factor in her termination and that she was retaliated against for giving statements to CADC attorneys in the Castleberry/Bartlett personnel investigation and for giving a written statement to CADC management regarding Livingston's fall.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953 (8th Cir.1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

DISCUSSION

*A. Age Discrimination*

Plaintiff's Complaint states that CADC "committed an act of age discrimination in its reassignment of [P]laintiff's job duties" to Mary McMillian, a person "less than forty years of

4

age." (ECF No. 1, *Complaint*, ¶ 41). In response, Defendant points out that Plaintiff was permanently replaced by Beverly Coggins, age 53, roughly a month after Plaintiff was terminated.

The ADEA makes it "unlawful for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). When a plaintiff's ADEA claim is based upon circumstantial evidence rather than direct evidence, the familiar *McDonnell Douglas* burden-shifting framework is applied. *Rahlf v. Mo-Tech Corp., Inc.*, 642 F.3d 633, 637 (8th Cir. 2011). The burden is on the plaintiff to establish a prima facie case of age discrimination by showing (1) she is over 40; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by a substantially younger individual. *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 523 (8th Cir. 2010). "Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action." *Rahlf,* 642 F.3d at 637. If the employer gives a nondiscriminatory reason for its actions, the plaintiff then has the burden of showing that the employer's stated reason was pretext for discrimination. *Id*. "At all times, the plaintiff retains the burden of persuasion to prove that age was the 'but-for' cause of the termination." *Id*.

It is undisputed that Plaintiff is over 40 and that she suffered an adverse employment action. While CADC maintains that Plaintiff's actions during the Constance Barnes incident made her "unqualified" for the position, the Court will assume for these purposes that Plaintiff was qualified. Plaintiff's prima facie case begins to break down when considering the fourth element because she fails to show that a substantially younger individual replaced her.

Plaintiff claims that, because she was temporarily replaced by Mary McMillian (age 23), she can show that she was replaced by a substantially younger individual. It is a Plaintiff's permanent replacement, however, that is used for determining whether a prima facie case of discrimination has been established. *Lewis v. St. Cloud State Univ.*, 467 F.3d 1133, 1136-37 (8th Cir. 2006). Plaintiff's permanent replacement was approximately four years younger than Plaintiff; thus, the Court finds that Plaintiff was replaced by a person of comparable age shortly after she was terminated. *See Schiltz v. Burlington Northern R.R.*, 115 F.3d 1407, 1413 (8th Cir. 1997) (holding that a five-year age difference is insufficient to establish a prima facie case of age discrimination). Accordingly, Plaintiff has failed to establish a prima facie case of age discrimination.

Even if Plaintiff was successful in establishing a prima facie case, her ADEA claim would still fail. If a prima facie case has been established, CADC must then put forth a legitimate, non-discriminatory reason for Plaintiff's termination. In this case, CADC claims that Plaintiff was suspended and eventually terminated, along with three other employees, for violating CADC policy by failing to report a potentially impaired CADC van driver in a timely fashion. Because a nondiscriminatory reason has been submitted by CADC, Plaintiff must now "'present evidence, that considered in its entirety (1) creates a fact issue as to whether the defendant's proffered reasons are pretextual and (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision.'" *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 516 (8th Cir. 2011) (quoting *Wingate v. Gage County Sch. Dist., No. 34*, 528 F.3d 1074, 1079 (8th Cir. 2008)). "[P]roof that the explanation is false is necessary, but not sufficient, to show a pretext for discrimination under the ADEA. In other words, the plaintiff

6

must show that the employer's stated reason was false *and* that age discrimination was the real reason." *Id*. (emphasis added).

Plaintiff has offered little evidence that CADC's reason for her termination was false or that it was somehow motivated by age. Plaintiff focuses her arguments on whether or not she should have been terminated. According to Plaintiff, she acted responsibly in trying to locate Barnes and then calling Barnes to ascertain whether the report that Barnes was intoxicated was true. On the other hand, Defendant states that Plaintiff was terminated because she failed to report Barnes's impairment to CADC management for at least ten to fifteen minutes. Barnes was able to leave CADC's facility in a CADC vehicle and pick up a client prior to being stopped by law enforcement. Defendant, apparently, did not agree that Plaintiff acted responsibly and timely in the situation.

The Court will not sit as a "super-personnel department[] to second-guess the business decisions of employers." *Wilking v. County of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998). When an employer articulates a reason for terminating a plaintiff, it is not for the Court to decide whether the reason was wise, fair, or even correct. *Id*. The relevant question is whether the stated reason was truly the reason for the plaintiff's termination. *Id*. Here, Plaintiff does not dispute that she became aware of the allegation regarding Barnes, that she failed to notify a supervisor immediately, and that she failed to get Barnes to return to CADC after calling her twice. CADC asserts that it believed in good faith that Barnes was a danger and that CADC policy had been violated by the employees who did not timely report Barnes's behavior. Other than arguing the merits of the termination decision, Plaintiff has offered no evidence that CADC somehow manufactured this incident as an excuse to terminate her.

In addition to failing to show pretext, a closer look at which employees were terminated as a result of the Barnes incident also undercuts Plaintiff's theory. Plaintiff does not dispute CADC's determination that six employees were aware of Barnes's suspicious behavior. Two of those employees, age 49 and 53, were determined to have reported the behavior in a timely fashion and were not terminated. Of the four employees who were terminated, including Plaintiff, one was in her early thirties. Considering the ages of those kept on and those terminated, coupled with the legitimate reason for the terminations, the Court finds nothing to suggest that CADC was targeting older employees.

Because Plaintiff has failed to establish a prima facie case of age discrimination and has failed to show that CADC's reason for terminating her was pretextual, summary judgment in favor of CADC as to Plaintiff's age discrimination claim is appropriate.

*B. Race Discrimination*

Plaintiff has not presented any direct evidence of race discrimination, so the Court will analyze her claims under the *McDonnell Douglas* burden-shifting framework. *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012). Under this familiar framework, a plaintiff must first establish a prima facie case of discrimination. *Id*. To establish a prima facie case of race discrimination, a plaintiff must show that she "is a member of a protected class, (2) [s]he met [her] employer's legitimate expectations, (3) [s]he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." *Id*. (citing *Lake v. Yellow Transp., Inc.,* 596 F.3d 871, 874 (8th Cir. 2010)). If the plaintiff successfully establishes a prima facie case, the defendant may rebut the prima facie case by articulating a non-discriminatory reason for its action. *Id*. The burden then shifts to the plaintiff to show that the

defendant's proffered reason was merely pretext for discrimination. *Id*. The Court notes that Plaintiff's Title VII and ACRA claims are analyzed under the same standards. *Bone v. G4S Youth Services, LLC*, 686 F.3d 948, 953 (8th Cir. 2012).

There is no dispute that Plaintiff, an African-American, is a member of a protected class and that she suffered an adverse employment action. While CADC claims that Plaintiff was not meeting its legitimate expectations when she was terminated, the Court will assume for these purposes that she was. The question is whether Plaintiff can establish the fourth element, which is that similarly situated employees were treated more favorably. Plaintiff states that one female employee, Maria Garcia, who is Hispanic was treated "differently."

According to Plaintiff, Garcia engaged in the same misconduct as Plaintiff—failing to timely report Barnes's conduct to a supervisor—but was not terminated. Plaintiff claims that Garcia delayed "just as long if not longer in notifying Ms. Bartlett [Garcia's supervisor]." CADC, however, maintains that its investigation revealed that "Garcia timely reported Ms. Barnes to Ms. Castleberry, who was a supervisor when Ms. Bartlett was unavailable." (ECF No. 23-4, *Affidavit of Carol Staley*, ¶ 12). There is no evidence in the record to support Plaintiff's allegation that Garcia engaged in the same misconduct as Plaintiff. In fact, the employees who were determined to have engaged in the same misconduct as Plaintiff were terminated along with her. Plaintiff must substantiate her claims with more than speculation and conjecture in order to survive summary judgment. *Marquez v. Bridgestone/Firestone, Inc.*, 353 F.3d 1037, 1038 (8th Cir. 2004).

Even if Plaintiff was successful in establishing a prima facie case, her race discrimination claim would still fail. If a prima facie case has been established, CADC must then put forth a legitimate, non-discriminatory reason for Plaintiff's termination. In this case,

CADC claims that Plaintiff was suspended and eventually terminated, along with three other employees, for violating CADC policy by failing to report a potentially impaired CADC van driver in a timely fashion. CADC, therefore, has met its burden of demonstrating a legitimate, nondiscriminatory reason for terminating Plaintiff. Plaintiff, however, claims that CADC's reason for terminating her is a pretext for racial discrimination.

To support her claim of pretext, Plaintiff argues the merits of CADC's decision to terminate her, asserting that her actions, under the circumstances, were "rational and responsible." As stated previously, the Court will not sit as a "super-personnel department[] reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Bone*, 686 F.3d at 955. Here, Plaintiff does not dispute that she became aware of the allegation regarding Barnes, that she failed to notify a supervisor immediately, and that she failed to get Barnes to return to CADC after calling her twice. So long as CADC had a "good faith" basis for terminating Plaintiff, it does not matter whether Plaintiff thought she acted rationally and responsibly in the situation. *See id*. CADC has demonstrated that it believed in good faith that Plaintiff had violated its policy when Plaintiff did not immediately report Barnes's behavior to Plaintiff's supervisor. Other than arguing the merits of the termination decision and pointing to the actions of Garcia, Plaintiff has offered no evidence that CADC somehow manufactured this incident as an excuse to terminate her.

In addition to failing to show pretext, a closer look at which employees were terminated as a result of the Barnes incident also undercuts Plaintiff's theory. Of the four employees who were terminated for failing to timely report Barnes's behavior/impairment to CADC management, two were African-American and two were Caucasian. Considering the races of

10

those kept on and those terminated, coupled with the legitimate reason for the terminations, the Court finds nothing to suggest that CADC intentionally discriminated against Plaintiff because of her race.

### C.  ACRA Retaliation Claims

Plaintiff states that she was discriminated against because she gave a statement regarding Livingston's fall at work and because she gave a statement to attorneys investigating a work dispute involving two CADC employees, Bartlett and Castleberry.  (ECF No. 1, *Complaint*, ¶¶ 48-49).  The Court will discuss each of these claims in turn.

#### 1.  Retaliation Claim Based on Livingston's Injury

Plaintiff cites no law in support of her retaliation claim based upon her giving a written statement (at her employer's request) in connection with Livingston's injury at work and workers' compensation claim.  The Court notes that Plaintiff's retaliation claim in this context is unclear.  Her Complaint states, under the heading "Violation of the Arkansas Civil Rights Act," that "Defendant discriminated against [P]laintiff in retaliation because [P]laintiff was a witness and gave a statement regarding Ms. Livingston's fall and injury."

In her Complaint, Plaintiff attempts to frame her retaliation claim in connection with Livingston's injury as falling under the purview of ACRA.  In her response, Plaintiff states that "under state law and under the federal Whistle Blower's statutes" she is certainly "entitled to make a claim that she was terminated wrongfully for protecting a fellow employee's right by making a statement."  The Court has difficulty understanding what Plaintiff is trying to convey in the above statement as Plaintiff has offered absolutely no authority to support these speculative and conjecturable claims.  Accordingly, the Court finds that summary judgment in favor of

CADC as to Plaintiff's retaliation claim under ACRA in connection with Ms. Livingston's workers' compensation claim is appropriate.

### 2. Retaliation Claim Based on Bartlett/Castleberry Investigation

Plaintiff's Complaint alleges that CADC violated ACRA by retaliating against her for giving "a statement to [CADC] attorneys investigating a work situation involving Ms. Bartlett [Plaintiff's supervisor] and Ms. Castleberry [Bartlett's assistant], who are both white." (ECF No. 1, *Complaint*, ¶ 49). In her Complaint, Plaintiff alleges that Ms. Bartlett regularly discriminated against African-American employees. Plaintiff's general claim is that she was retaliated against for objecting to and making a statement that opposed Bartlett's alleged discrimination.

Title VII makes it unlawful for an employer to retaliate against an employee for "oppos[ing] any practice made unlawful by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). ACRA contains a nearly identical prohibition. ARK. CODE ANN. § 16-123-108(a). "To overcome summary judgment on retaliation claims under ACRA, a plaintiff must make the same showing as is required on an analogous claim under Title VII." *Wallace v. Sparks Health System*, 415 F.3d 853, 861 (8th Cir. 2005). Plaintiff's retaliation claim is subject to the *McDonnell Douglas* burden-shifting framework, *Logan v. Liberty Healthcare Corp.,* 416 F.3d 877, 880 (8th Cir. 2005). Plaintiff must establish a prima facie case of retaliation by showing that "(1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action." *Burkhart v. Am. Railcar Indus., Inc*., 603 F.3d 472, 477 (8th Cir. 2010). If Plaintiff establishes a prima facie case and CADC then produces a legitimate, non-discriminatory reason for the termination, the burden shifts to Plaintiff to "present evidence that '(1) creates a

question of fact as to whether [CADC's] proffered reason was pretextual and (2) creates a reasonable inference that [CADC] acted in retaliation.'" *Id*. (quoting *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002)).

It is undisputed that Plaintiff suffered an adverse employment action, and the Court will assume for these purposes that her interview with CADC attorneys regarding Bartlett's alleged discriminatory conduct was protected activity. However, Plaintiff has failed to put forth sufficient evidence of the third element—that there was a causal connection between her interview with CADC attorneys and her termination. To establish that there was a causal connection, "the plaintiff must show that the protected conduct was a 'determinative—not merely motivating—factor in the employer's adverse employment decision.'" *Tyler v. Univ. of Arkansas Bd. of Trustees*, 628 F.3d 980, 985 (8th Cir. 2011) (quoting *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1148 (8th Cir. 2008)). Plaintiff is also required to show more than a "temporal connection . . . to present a genuine factual issue" on whether there was a causal connection. *Id*. at 986. The Eighth Circuit has held that one or two-month intervals between the protected activity and the adverse employment action dilute any inference of causation when the temporal element is the only evidence of retaliation. *Kipp v. Missouri Highway & Transp. Comm'n.*, 280 F.3d 893, 897 (8th Cir. 2002); *Smith v. Fairview Ridges Hosp*., 625 F.3d 1076, 1088 (8th Cir. 2010), abrogated on other grounds by *Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011).

In this case, Plaintiff's only evidence of retaliation appears to be temporal.[1] She interviewed with a CADC attorney about Ms. Bartlett's behavior on August 12, 2010. Her

---

[1] Plaintiff alleges in her Complaint that "several employees who were interviewed and gave statements to the attorneys regarding the dispute between Debbie Bartlett and Sue Ellen Castleberry were terminated" (ECF No. 1, Complaint, ¶ 14). However, Plaintiff has not given specifics regarding this allegation at the summary judgment stage. In her response to the present motion, Plaintiff makes the conclusory statement

13

suspension stemming from the Constance Barnes incident was imposed on December 17, 2010. She was not terminated until January 7, 2011. Given the four-month interval between Plaintiff's interview and her suspension, the Court cannot infer a causal connection between Plaintiff's protected activity and the adverse employment action.

Additionally, Plaintiff has offered little evidence that Ms. Bartlett had any meaningful influence in the termination decision.[2] Each of the employees involved in the Constance Barnes incident were interviewed by Carol Staley, CADC's human resources manager. Ultimately, it was Staley who recommended to Larry Cogburn, Executive Director, that those employees who were determined to have failed to report or timely report Barnes to management should be terminated. Cogburn accepted Staley's recommendation and terminated the four employees.

Plaintiff has failed to show a causal connection between her protected activity and the subsequent adverse employment action. Accordingly, she has failed to establish a prima facie case of retaliation, and summary judgment in favor of CADC is appropriate as to this claim.[3]

## CONCLUSION

For the reasons stated above, the Court finds that summary judgment in favor of CADC is appropriate as to Plaintiff's age and race discrimination and retaliation claims. Accordingly, the Motion for Summary Judgment (ECF No. 22) should be and hereby is **GRANTED**. Plaintiff's

---

that "parties who had given negative statement[s] against Ms. Bartlett in the Castleberry-Bartlett dispute were in fact terminated." (ECF No. 27). Plaintiff offers no specifics as to who these other employees are or what circumstances surrounded their terminations.

[2] It is worth noting that at least one employee who was terminated in the aftermath of the Constance Barnes incident was not supervised by Bartlett.

[3] Even if Plaintiff were able to establish a prima facie case of retaliation, she would be unable to establish that CADC's termination decision was pretext for retaliation. CADC has produced very strong evidence regarding their legitimate, nondiscriminatory reason for the termination. Much like her age discrimination claim, Plaintiff has offered no evidence that would suggest that retaliation was the *determinative* factor in her termination.

Complaint is **DISMISSED WITH PREJUDICE**.  A Judgment of even date consistent with this Opinion shall issue.

      IT IS SO ORDERED, on this 7th day of June, 2013.

                                            /s/ Susan O. Hickey  
                                            Susan O. Hickey  
                                            United States District Judge

Case 1:11-cv-01073-SOH   Document 30   Filed 06/07/13   Page 15 of 15 PageID #: 779